W. R. WISSMANN, Appellant,

v.

Eugene PAPE, Appellee.

No. 10443.

Court of Civil Appeals of Texas.

Austin.

Dec. 19, 1956.

Park Street, Walter Powell Gray; Hugh J. Fitz-Gerald, San Antonio, for appellant.

Schleyer & Bartram, New Braunfels, for appellee.

ARCHER, Chief Justice.

Appellee sued appellant for personal injuries and for costs of necessary repairs to appellee's automobile, both injuries and repairs totaling $3,000, alleged to have resulted from a collision between the cars of the appellee and the appellant, respectively. The accident was alleged to have occurred June 6, 1954, in New Braunfels, Texas, at the intersection of North Houston Street and East Austin Street. Suit was filed against appellant in the District Court of Comal County, Texas. Appellant filed a plea of privilege to be sued in the county of his residence, Bexar County, Texas. Appellee filed his controverting affidavit setting out exception 9–A of Art. 1995, R.C.S., Vernon's Ann.Civ.St. art. 1995, subd. 9a, as the exception governing this case. Upon hearing, appellant's Plea of Privilege was overruled, from which this appeal is taken.

The appeal is based on two points:

"First Point: The trial court erred in failing to sustain Appellant's Plea of Privilege for the reason that Appellee failed to establish by a preponderance of the evidence an exception to Article 1995, R.C.S. of Texas, in that Appellee failed to prove negligence under Section 9–A of such article (as amended).

"Second Point: The trial court erred in failing to sustain Appellant's Plea of Privilege for the reason that Appellee failed to establish by a pre-

ponderance of the evidence, under Section 9–A or Art. 1995 (as amended) that negligence, if any, was negligence on the part of Appellant."

We believe that the court was justified in holding that appellee "had discharged the burden of proof essential to sustain Exception 9–A to Article 1995, R.C.S. (as amended) because the evidence established an act of negligence on the part of appellant in Comal County, Texas."

Appellee was driving South on Houston Street and appellant was traveling West on Austin Street. Houston Street is 45 feet wide and Austin Street is 30 feet wide.

Appellee alleged as ground of negligence that:

"1. Appellee had the right of way as against Appellant who approached the intersection from Appellee's left and that Appellant failed to yield.

"2. That he failed to yield the right of way to Appellee who had already entered the intersection from the right.

"3. That in approaching the intersection appellant failed to keep a proper lookout.

"4. That he failed to have his automobile under proper control.

"5. That he drove his car into the intersection at an excessive rate of speed.

"6. That he failed to stop before entering the intersection."

Appellee testified as did a City Police Officer, but appellant did not.

Appellee testified that he was the first to enter the intersection, and that appellant was approaching from appellee's left, and skidded into the intersection leaving defined skid marks for a distance of 33 feet before colliding with appellee's automobile at a point past the center of the intersection.

Appellant contends that the evidence is insufficient to establish negligence; and, that it was not shown that the negligence, if any, was negligence on the part of appellant.

We believe that the evidence reasonably supports the order overruling the Plea of Privilege.

Appellee testified on direct examination:

"Q. Mr. Pape, you have testified that you were approaching an intersection, and I will ask you whether or not at the time you approached the intersection, were there any other cars in the intersection? A. No, sir.

"Q. How far had you gone into the intersection when you first observed, if you did observe, the car driven by Mr. Wissman? A. Well, I was practically through the intersection whenever Mr. Wissman collided with me.

"Q. I believe you testified that you heard the squeaking of tires, is that correct? A. That is right.

"Q. Whereabouts in relation to your car did the other car strike you? A. He hit my left front fender and bumper on my side and then whenever he hit that, his car swung around and the back end of it hit the door and my back fender and pushed them all in and then his car went on up and slid around and started back the way I was coming from.

"Q. What happened to you after the collision? A. Whenever he hit me, my car moved, I would say, three or four feet then forward and just a little to the, a little to the right.

"Q. Mr. Wissman's car then, I believe you testified, struck you and then whirled around and then went out in front and whirled back and was headed the same direction you were coming from? A. Yes, sir.

"Q. When was the first time, Mr. Pape, that you actually saw Mr. Wissman's car to actually know that the car was going to strike you? A. When I entered the intersection I naturally looked right and left to observe the traffic. But to actually see he was going to hit me, well, I was already in the intersection."

The appellee testified as to the resulting damage to his car and as to personal injuries received in the accident.

On cross-examination appellee testified in response to question:

"Q. And how far were you from the intersection when you first noticed Mr. Wissman's car? A. Well, like I say, when I came up to the intersection I observed the traffic and then I proceeded on through the intersection and—

* * * * * *

"Q. How far into the intersection beyond the north curb line were you when you first noticed Mr. Wissman's car? A. Well, roughly guessing, I would say five or six feet.

"Q. Five or six feet. What did you do then? A. Well, whenever I seen him coming, heard those tires—

"Q. Did you see him first or did you hear the tires? A. Well, I heard the tires squealing first, and then I seen—when I actually seen he could not stop, well, then it was too late, and I couldn't do anything about it. He was just right upon me before I— too late for me to do anything.

"Q. How far did you travel from the time you first saw his car until the moment of the impact? A. Well, from the time I actually seen he was actually going to hit me, I couldn't have traveled over a couple of feet. Something like that.

* * * * * *

"Q. It all happened so fast—did you see who was driving the Wissman vehicle? A. No, sir, I didn't.

"Q. You did not. Do you know whether Mr. Wissman had anyone with him? A. Yes, sir.

"Q. Do you know who that was? A. His wife."

Appellee testified that after the collision the appellant came around and apologized for hitting him and said he (appellant) was sorry.

The officer testified as to an investigation and that Mr. Wissman said he was the owner of the 1951 Oldsmobile.

■ We view the testimony in the light most favorable to appellee and since there was no conflict the evidence will be resolved in support of the order. 3B Tex. Jur. 388; Dunn v. Johnson, Tex.Civ.App., 274 S.W.2d 108.

■ As has been noted appellant did not offer any evidence and while this did not relieve the appellee of the burden of proving that he came within one of the exceptions to the general venue rule, it does increase the force of appellee's evidence. 17 Tex.Jur. 306, Lindsey v. State, Tex.Civ. App., 194 S.W.2d 413; Galloway v. Nichols, Tex.Civ.App., 269 S.W.2d 850.

The judgment of the trial court is affirmed.